(REV.5/85) Criminal Complaint                                         AUSA Michael Donovan (312) 886 - 2035

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

**06CR 0621**

UNITED STATES OF AMERICA

v.                                                      CRIMINAL COMPLAINT

PAUL TAYLOR                                   CASE NUMBER: MAGISTRATE JUDGE SCHENKIER

FILED
AUG 29 2006
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

I, the undersigned complainant being duly sworn, state the following is true and correct to the best of my knowledge and belief.

On or about July 12, 2006, at Chicago, in the Northern District of Illinois, Eastern Division, defendant,

> having previously been convicted of a crime punishable by a term of imprisonment exceeding one year, knowingly possessed a firearm, namely, a Smith and Wesson, blue steel, .32 caliber revolver, which firearm was in and affecting interstate commerce, in that it had traveled in interstate commerce,

in violation of Title 18, United States Code, Section 922(g).

I further state that I am a Special Agent with the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives, and that this complaint is based on the following facts:

See Attached Affidavit

Continued on the attached sheet and made a part hereof: _X_ Yes ___ No

_____
Signature of Complainant

Sworn to before me and subscribed in my presence,

August 29, 2006                                    at        Chicago, Illinois
Date                                                         City and State

Sidney I. Schenkier, U.S. Magistrate Judge         _____
Name & Title of Judicial Officer                   Signature of Judicial Officer

STATE OF ILLINOIS    )
                     )  SS
COUNTY OF COOK       )

## AFFIDAVIT

I, John N. Rotunno, being duly sworn on oath, state as follows:

1. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and have been so employed for approximately 20 years. Prior to working for the ATF, I was a Special Agent with the Drug Enforcement Administration (DEA) for three years. In connection with my official ATF duties, I investigate criminal violations of federal firearms and narcotics laws, including but not limited to Title 18, United States Code, Sections 922, 923, and 924, and Title 21, United States code, Sections 841, 843, 846, and 848. I have also been involved in various types of investigations, and in the debriefing of defendants, witnesses informants, and others who have knowledge of firearms and narcotics trafficking, and of the laundering and concealing of proceeds from firearms and drug trafficking. I have received specialized training in the enforcement of laws concerning the activities of firearms and narcotics traffickers.

2. The information set forth in this affidavit is based upon my participation in this investigation, interviews of witnesses, review of law enforcement reports, my discussions with other law enforcement officers, and my experience and training. The recitation of facts contained in this affidavit is not meant to be a complete narrative of all that has occurred in connection with this investigation, but is only a summary of facts necessary to show probable cause that PAUL TAYLOR, having at least one felony conviction, knowingly possessed a firearm, namely a Smith and Wesson, .32 caliber revolver, serial number 663212, loaded with 6 live rounds of ammunition, to an ATF Confidential Informant (hereafter referred to as "CI"), said weapon

having moved in and affecting interstate commerce, in violation of Title 18, United States Code, Section 922(g)(1).

3. Prior to and after all of the undercover meetings between the CI and Paul TAYLOR set forth in this affidavit, the CI was searched for contraband by ATF and Illinois State Police (hereafter "ISP") agents. Agents never discovered contraband on the person of the CI before any undercover meeting set forth in this affidavit.

4. TAYLOR is currently on supervised release with the Illinois Department of Corrections, District 1 Parole Division, Chicago, Illinois, after serving a sentence of 6 years of imprisonment in the Illinois Department of Corrections. Specifically, on April 23, 2003, in Chicago, Illinois, case number 03CR1024903, TAYLOR pled guilty to attempted armed robbery. TAYLOR was sentenced to six years of imprisonment for this conviction.

5. On June 26 and 27, 2006, the CI had recorded telephone conversations with TAYLOR in which the CI negotiated a future purchase of two "jabs" of heroin from TAYLOR. A jab contains seven pieces of heroin, wrapped separately. According to the tape of these conversations, TAYLOR and the CI agreed that TAYLOR would sell the CI two jabs for $150.

6. On June 27, 2006, at about 11:00 a.m., the CI met with TAYLOR at a Burger King restaurant located at the southeast corner of Pulaski Road and Chicago Avenue, in Chicago, Illinois. During this meeting, which was surveilled and audio-recorded by ATF agents, the CI purchased 2 jabs, or 14 pieces of heroin, for $150, from TAYLOR. According to the CI and the tape of this meeting, the CI and TAYLOR discussed a plan to commit an armed robbery with handguns, of an unsuspecting drug purchaser. The 14 pieces of heroin provided to the CI by TAYLOR during this meeting have been subsequently analyzed by the DEA, North Central Laboratory and found to weigh 2.2 grams, and to contain heroin and fentanyl.

7. On July 2 and 3, 2006, the CI had recorded telephone conversations with TAYLOR in which, according to the tapes of those conversations, TAYLOR and the CI negotiated the purchase of heroin and crack cocaine from TAYLOR. TAYLOR and the CI agreed that the CI would purchase heroin and crack cocaine for $200. These conversations were audio-recorded and monitored by ATF agents.

8. On July 3, 2006, the CI met with TAYLOR at the same Burger King restaurant. Prior to this meeting, agents equipped the CI with a recording device which recorded this meeting between TAYLOR and the CI. Agents surveilled this meeting. According to the CI, once inside the Burger King, the CI purchased one jab of heroin, or 7 pieces of heroin, from the CI. After purchasing the jab of heroin from TAYLOR for $70, agents observed the CI and TAYLOR walk to the area of Augusta and Kildare Streets, Chicago, Illinois. Near this location, TAYLOR met with an unknown individual outside the CI's presence.

9. After this meeting with the unknown individual, TAYLOR met with the CI and, according to the CI, TAYLOR sold the CI an "8-ball" of crack cocaine for $110. According to the CI and the tape of the conversation, during the course of this meeting, the CI and TAYLOR discussed plans to commit an armed robbery with handguns. According to the CI and the tape, TAYLOR agreed to supply the handguns to do the armed robbery. The CI and TAYLOR were surveilled while they were together on July 3, 2006, and agents video-recorded and audio-recorded this meeting. The heroin and crack cocaine sold to the CI by TAYLOR on July 3, 2006, were subsequently analyzed by the DEA North Central Laboratory and found to be heroin laced with fentanyl, in the amount of 1.1 grams, and cocaine base, in the amount of 3.4 grams.

10. On July 10 and 11, 2006, the CI had several telephone conversations with TAYLOR during which the CI and TAYLOR discussed a transaction for one ounce of crack

cocaine. These telephone conversations were recorded and monitored by ATF agents.

11. On July 11, 2006, at about 12:21 p.m., agents observed the CI as he/she met with TAYLOR at the same Burger King restaurant. During this meeting, the CI purchased one ounce of crack cocaine from TAYLOR for $820. According to the CI and the tape of the conversation, during this meeting, the CI and TAYLOR discussed plans to commit an armed robbery of an unsuspecting drug user. TAYLOR agreed to supply two handguns to commit the armed robbery. This meeting and conversation between the CI and TAYLOR was surveilled, audio-recorded, and monitored by ATF and ISP agents.

12. The crack cocaine the CI purchased from TAYLOR on July 11, 2006, was subsequently analyzed by the DEA North Central Laboratory and found to be 27.6 grams of cocaine base.

13. Following the above transaction, on July 11, 2006, the CI had several telephone conversations with TAYLOR, and , according to the tapes of these conversations, the CI and TAYLOR agreed to commit an armed robbery of an unsuspecting drug user-purchaser. The CI and TAYLOR agreed to meet on July 12, 2006 at 11:00 p.m. to commit the armed robbery. These telephone calls on July 11, 2006, were audio-recorded and monitored by ATF agents.

14. On July 12, 2006, agents met with the CI equipped the CI with a recording device which recorded the follwoing meeting between TAYLOR and the CI. Later that day, at about 3:00 p.m., the CI drove his vehicle and picked up TAYLOR on Springfield Street in Chicago. The CI then drove to the area of 838 Kildare Street, Chicago, Illinois. TAYLOR got out of the CI's vehicle. A short time later TAYLOR returned to the CI's vehicle. According to the CI, when TAYLOR returned to the CI's vehicle, TAYLOR handed the CI a handgun. ATF agents have reviewed a video of this transaction which depicts TAYLOR's hand holding a gun, as TAYLOR

hands the gun to the CI, while TAYLOR says "you hold it." According to the audio tape, TAYLOR explained to the CI that a relative of TAYLOR's had the other gun.

15. According to the CI, and the video tape which was worn by the CI, the CI drove to an alley, got out of his/her car, and proceeded to place the handgun provided by TAYLOR into the trunk of the CI's car, as pre-arranged with ATF agents. After placing TAYLOR's gun into his trunk and closing the trunk, the CI and TAYLOR were observed driving from the area followed by ATF and ISP agents.

16. As the CI and TAYLOR drove westbound on Roosevelt Road past Kostner Avenue, in Chicago, ISP conducted a traffic stop on the CI and TAYLOR. During questioning by the ISP, TAYLOR stated that he and his friend [meaning the CI] were on their way to help someone move. TAYLOR denied ownership of the car or any of its contents.

17. The CI was subsequently arrested for a traffic warrant (which did not actually exist) and TAYLOR was allowed to leave the area. The CI's vehicle was subsequently driven to the Chicago Police Department station located at Homan Square. At this time, a search of the CI's trunk revealed a Smith and Wesson, blue steel, .32 caliber "long" 6-shot revolver, serial number 663212. This handgun was loaded with 6 live rounds of ammunition.

18. The entire meeting and conversation between the CI and TAYLOR, on July 12, 2006, was surveilled, video-recorded, and audio-recorded and monitored, by ATF and ISP agents.

19. On July 14, 2006, the CI had a recorded telephone conversation with TAYLOR. According to the tape of this conversation, TAYLOR and the CI spoke about the circumstances of the CI's arrest and the seizure of TAYLOR's gun. During this conversation, TAYLOR referred to the gun as "my burner." TAYLOR further advised that because the CI lost TAYLOR's gun, TAYLOR wanted $200 as payment for the gun. The CI agreed to pay TAYLOR the $200 at a

later date.

20. On July 16 and 17, 2006, the CI placed several recorded telephone calls to TAYLOR. According to the tape of these conversations, the CI arranged to meet and pay TAYLOR the $200 TAYLOR had demanded for the lost handgun, as well as to purchase some more heroin. Furthermore, TAYLOR advised the CI that TAYLOR had a new victim on whom they could commit an armed robbery. TAYLOR advised the CI that he would discuss this plan with the CI in person.

21. On July 17, 2006, at about 12:00 p.m., the CI met with TAYLOR at the same Burger King. The CI was wearing a recording device provided by ATF agents, and agents were conducting surveillance of this meeting. During the meeting, the CI paid TAYLOR the $200 for the seized handgun. Also at this time, TAYLOR sold the CI another two jabs, or 14 pieces, of heroin for $150. The heroin provided by TAYLOR was subsequently analyzed by the ISP forensic laboratory and found to be heroin laced with fentanyl.

22. On August 28, 2006, ATF agents arrested TAYLOR. After being advised of his Constitutional rights, and agreeing to waive those rights and talk to agents, TAYLOR admitted, among other things, that he had possessed the Smith and Wesson handgun recovered on July 12, 2006, which TAYLOR had received from Individual A. TAYLOR stated that TAYLOR went to Individual A's house to get the handgun while the CI was waiting in the CI's car. TAYLOR admitted getting into the CI's car and giving the handgun to the CI. TAYLOR stated that after the gun was seized, Individual A demanded payment from TAYLOR for the seized handgun and TAYLOR, in turn, demanded payment from the CI. TAYLOR stated that he received $200 in U.S. currency from the CI in order to pay for the seized gun. TAYLOR stated that TAYLOR gave Individual A the $200 in U.S. currency as payment for the seized handgun.

23. The Smith and Wesson revolver, serial number 663212, was manufactured outside Illinois.

FURTHER AFFIANT SAYETH NOT.

_John N. Rotunno_
John Rotunno
Special Agent, Bureau of Alcohol, Tobacco, Firearms, and Explosives

Subscribed and sworn to before me,
This 29th day of August, 2006

U.S. Magistrate Judge Sidney I. Schenkier